UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DARRELL CAIN,**

    **Plaintiff,**

    v.

**HARRIS TEETER, INC.,**

    **Defendant.**

Civil Action No. 12-854 (JEB)

## MEMORANDUM OPINION

Plaintiff Darrell Cain blames his injured back on a June 2009 accident in which a Harris Teeter employee hit him with a pallet jack. To prove causation, Cain relies on expert testimony by Dr. William Lehman, who began treating Cain in 2011. Harris Teeter now moves to exclude that testimony. It argues that, because Lehman formed his opinion without consulting medical records from July 2009, he cannot rule out an October 2009 accident as the actual cause of Cain's injuries. As Lehman's causation testimony is a linchpin for other experts and, indeed, the case itself, Harris Teeter also moves to exclude the testimony of those experts and for partial summary judgment. Concluding that Lehman's causation testimony has sufficient basis, is reliable, and is relevant, the Court will deny the Motion.

**I.  Background**

While making a delivery at a Harris Teeter grocery store around June 9, 2009, Cain was struck by a pallet jack driven by a Harris Teeter employee. See Mot. at 1. According to Plaintiff, that negligence seriously injured his lower back, leaving him unable to work despite multiple surgeries. See Opp. at 1.

1

Cain initially sought treatment from the Lewisville Medical Center, first on June 10 and then again on June 12. See Mot., Exh. 13 (J. Richard Wells, Independent Medical Evaluation of Darrell Cain (Feb. 22, 2013)) at 3. Doctors there prescribed medication and ordered light work duty. See id. Twice in the next two weeks, Cain sought further treatment at an urgent-care center. See id.

On July 14, Cain saw Dr. David DuPuy. See Mot., Exh. 1 (DuPuy Treatment Notes) at 3. Based on x-rays and a physical examination, DuPuy diagnosed a "[l]ow back sprain with contusion[s] of [the] left hip, knee and left foot." Id. at 3-4. DuPuy prescribed further pain medication and extended the restrictions on work. See id. at 4. A return visit on August 4, which again included x-rays and an examination, revealed improvement. See id. at 2. In their final appointment on August 26, DuPuy found Cain's physical examination to be "essentially normal now." Id. at 1. DuPuy therefore released Cain "as being at MMI [maximum medical improvement] and as having sustained no permanent partial physical impairment." Id. Cain disputes DuPuy's findings, maintaining that he continued to have pain in his back and legs at that time. See Opp., Exh. 5 (Dep. of Darrell Cain) at 98:21-100:3.

In October, Cain's back gave out while he was moving bags of ice. According to Cain, he was moving five-pound ice bags – one at a time – from one pallet to another. See id. at 101:17-104:20. Perhaps ten bags in, while twisting between pallets, he felt a sharp pain in his lower back. See id. Harris Teeter suggests that the bags Cain was moving were in fact heavier than he claims. See Mot. at 6 n.3. Either way, it is clear that he was seriously hurt.

Cain ended up at Carolina Orthopaedic Surgery Associates, where he initially saw Dr. Matthew Schwartz and Dr. Thomas Fleischer. See id. at 6. After an MRI in early November – Cain's first to that point – revealed herniated disks in his back, he underwent surgery on January

2

4, 2010.  See id. at 6-7.  When Dr. Fleisher died in early 2011, Cain came under the care of Dr. William Lehman.  See id. at 8.  Lehman performed another surgery on August 4, 2011.  See id.  Despite the operations, Cain's back problems persist.  According to Lehman, Cain will never work again as a commercial truck driver and will experience lifelong pain.  See ECF No. 14 (Dep. of William Lehman) at 120:3-9, 121:5-8.

Cain sued Harris Teeter for negligence in D.C. Superior Court in 2012, requesting $2.5 million in compensatory damages.  Harris Teeter removed the case to federal court, and trial is currently scheduled for January 2014.

Cain's expert on causation is Lehman.  See ECF No. 6 (Plaintiff's Expert Designation) at 2-4.  At his deposition, Lehman opined that the June 9 pallet-jack accident caused Cain's problems.  See, e.g., Lehman Dep. at 133:4-17.  Yet, in coming to that opinion, Lehman based his testimony entirely on the Carolina Orthopaedic records; he never examined DuPuy's records (or anyone else's).  See id. at 11:6-16:5.

Harris Teeter now moves *in limine* to exclude Lehman's testimony.  As Plaintiff's other experts on damages – Dr. Sanjay Nandurkar and Robert Brabham – depend on Lehman's finding of a causal link, Harris Teeter moves *in limine* to exclude their testimony as well.  Harris Teeter further argues that, because Cain's injuries could have been caused by either the pallet jack or the ice bags, causation here is sufficiently complicated that D.C. law requires an expert.  If Lehman's testimony is excluded, the only expert on causation is gone, so Harris Teeter also moves for partial summary judgment prohibiting any recovery for injuries that postdate Cain's release from DuPuy's care (or, really, that postdate the ice-bags incident).  The Motion for Partial Summary Judgment or Alternatively Motion *in Limine* is now ripe.

**II.     Legal Standard**

A district court has "'broad discretion in determining whether to admit or exclude expert testimony.'" United States *ex rel.* Miller v. Bill Harbert Int'l Constr., Inc., 608 F.3d 871, 895 (D.C. Cir. 2010) (quoting United States v. Gatling, 96 F.3d 1511, 1523 (D.C. Cir. 1996)). Federal Rule of Evidence 702, which governs the admissibility of such testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, trial courts are required to act as gatekeepers who may only admit expert testimony if it is both relevant and reliable. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (applying Daubert's holding to non-scientific expert testimony); see also Calvetti v. Antcliff, 346 F. Supp. 2d 92, 110-11 (D.D.C. 2004) (describing "gatekeeping function" of the district court).

Expert testimony is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); see also Daubert, 509 U.S. at 591 ("This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'") (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], at 702-18 (1988)). The trial judge, moreover, has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho, 526 U.S. at 152; see also Daubert, 509 U.S. at 588 (noting "the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers

4

to 'opinion' testimony" in the context of expert testimony) (internal quotation marks omitted). While the way in which "reliability is evaluated may vary from case to case," United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (*en banc*), in all cases, "[t]he trial judge . . . must find that [the proffered expert testimony] is properly grounded, well-reasoned, and not speculative before it can be admitted." Fed. R. Evid. 702 advisory comm. notes (2000 amend.).

**III.   Analysis**

Without DuPuy's medical records, Harris Teeter argues, Lehman cannot know whether the pallet jack or the bags of ice caused Cain's injuries. Harris Teeter thus moves to exclude his testimony for insufficient foundation, unreliability, and irrelevance – or, in the words of Rule 702: because his testimony is not "based on sufficient facts or data," Fed. R. Evid. 702(b); because he did not "reliably appl[y] the principles and methods to the facts of the case," Fed. R. Evid. 702(d); and because his testimony will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed R. Evid. 702(a). The Court rejects each challenge in turn.

First, Lehman based his testimony on "sufficient facts or data." During their first appointment, Cain told Lehman about the pallet-jack accident and his early treatment by DuPuy. See Lehman Dep. at 123:15-125:9. The other Carolina Orthopaedic records that Lehman relied on also describe the June 9 accident and DuPuy's care, as well as the October incident with the bags of ice. See id. at 8:1-11:14. In other words, Lehman had plenty to base his causation opinion on. DuPuy's files, moreover, appear less than revelatory: they contain no MRI scan, for example. True, Lehman's causation testimony would be more compelling if he had also examined the medical records closest in time to the June 9 injury (and predating the ice-bags episode) – not only DuPuy's records but also those from the Lewisville Medical Center. That flaw does not make his testimony inadmissible, however. "Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 596.

      Second, Lehman reliably applied his medical expertise to find a causal link in this case. Such testimony on causation does not require certainty: "In those frequently occurring cases in which there is no scientific basis for identifying directly and conclusively the causal relationship between the defendant's wrong and the plaintiff's medical condition, medical experts recognize accepted protocols that permit the rendition of a causation opinion in terms of 'reasonable medical probability' or 'reasonable medical certainty.'" 4 Joseph M. McLaughlin *et al.*, <u>Weinstein's Federal Evidence</u> § 702.06[2][c], at 702-138 (2d ed. 2012). Despite Harris Teeter's best efforts to knock him off that standard, Lehman persisted in finding causation here to a reasonable medical certainty. <u>See</u> Lehman Dep. at 133:7-17, 141:17-142:4, 149:15-21. To the extent that Lehman agreed that improperly lifting a substantial bag of ice could hypothetically cause an injury like Cain's, those hypothetical facts were at odds with Cain's testimony. <u>Compare</u> <u>id.</u> at 148:8-18 (agreeing that "if the patient lifted [a] 100-pound bag of ice with his back, didn't bend his knee a little bit, that would be a pretty stupid thing to do" and "that's how you injure your back really bad"), <u>with</u> Cain Dep. at 101:20-103:12 (twisting to move one five-pound bag of ice from one pallet to another). In the face of "competing versions of the facts," a trial court should not use Rule 702 "to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed. R. Evid. 702 advisory comm. notes (2000 amend.).

      One could imagine similar facts in which intervening events would so complicate causation that no expert could render a reliable opinion. If, for example, Cain had badly broken

his vertebrae in mid-October, we might be skeptical about a doctor's ability to isolate the effects of the June 9 accident without examining earlier medical records. But that is not this case. Lehman considered and rejected the possibility that the blame lay with the ice bags: "[Y]ou're basically saying that activities of daily living could have caused symptoms similar to this – whether it be a bag of ice or just turning over in bed. Yes, those are all possibilities, but they don't fit the clinical history as I see it." Lehman Dep. at 154:4-9; cf. Miller v. United States, 287 Fed. App'x 982, 984 (3d Cir. 2008) ("In considering the reliability of testimony on causation, a court should consider whether the expert has adequately accounted for obvious alternative explanations.") (internal quotation marks omitted). His explanation makes sense. Because moving the bags of ice was – at least according to Cain – such a routine movement, Lehman can give a reliable opinion on causation without medical records that predate that incident.

Finally, Lehman's testimony is relevant. By providing reliable testimony – grounded on sufficient facts – on the causal link, Lehman will help the jury determine causation.

Lehman's testimony may therefore be admitted. As Harris Teeter's requests to exclude the other testimony and for partial summary judgment hinge on the inadmissibility of Lehman's testimony, those requests too must be denied.

### IV.     Conclusion

For the aforementioned reasons, the Court will deny Defendant's Motion for Partial Summary Judgment or Alternatively Motion *in Limine*. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 23, 2013